UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO. 1:21-cr-00378-TJK-3 |
| ) | |
| ) | |
| **EDWARD GEORGE, JR.,** ) | |
| ) | |
| Defendant, ) | |

### MOTION TO SEVER DEFENDANT GEORGE, JR.'S TRIAL FROM THAT OF HIS CO-DEFENDANTS

The Defendant, **EDWARD GEORGE, JR.,** by and through his undersigned counsels, George T. Pallas and Andrea S. Cunill[1], and pursuant to Rule 8, Federal Rules of Criminal Procedure, moves to sever his trial from that of his co-defendants.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 29, 2024, the Government filed a Third Superseding Indictment jointly charging GEORGE, JR. and his four (4) codefendants Arthur Jackman, Paul Rae[2], Kevin A. Tuck, and Nathaniel A. Tuck (also known as "Nathan" and "Tito") with nine-counts for offenses arising out of the events at the U.S. Capitol on January 6, 2021. [D.E. 181]. The joined defendants are not charged with conspiring with one another to commit any offense.

---

[1] Andrea S. Cunill, Esq. is appearing in a pro bono capacity to lead Attorney George Pallas for Edward George, Jr. in support and to meet the requirements of her Criminal Justice Administration ("CJA") application pending in the U.S. Southern District of Florida.

[2] Co-Defendant Paul Rae is separately Charged in Count 10 with Destruction of Government Property, in violation of Title 18, United States Code, Sections 1361 and 2 and Cout 11 with Civil Disorder in violation of Title 18, United States Code, Section 231 (a)(3). [D.E. 181].

GEORGE, JR., as joined with codefendants, is not alleged to identify with a common political or social group as argued by the Government as a member of the "Proud Boys". GEORGE, JR. does not dress, use slogans and gestures that are utilized by the "Proud Boys". At most, GEORGE, JR.'s presence on January 6, 2021 can simply be described as "mere presence" with Arthur Jackman, Paul Rae, Kevin A. Tuck, Nathaniel A. Tuck and the other hundreds of men and women who were present on January 6, 2021.

The defendant, GEORGE, JR., was presently living in Clearwater, Florida but was born in Fayetteville, NC having no family connection to any of the charged codefendants and arrested in North Carolina in this matter while with his family in North Carolina. Conversely, Kevin A. Tuck is the father of Nathaniel A. Tuck who both resided in Orlando, Florida and were arrested in Tampa, Florida. Arthur Jackman, who is from the Orlando, Florida area, admitted to the FBI has been a member of the "Proud Boys" since 2016 to support Donald Trump and that he had traveled to D.C. to be a "visual representation, to support President Trump and to stop the steal." As to Paul Rae, he is from Largo, Florida and openly self-identifies himself as a member of the "Proud Boys".

With respect to traveling to Washington, DC from Florida, to either observe or support President Trump on January 6, 2021, GEORGE, JR., traveled to Washington, DC with James Brett, Case No.: 1:22-cr-000110RRJL-5 before Senior Judge Richard J. Leon which was separately and distinct from the (4) codefendants in GEORGE, JR.'s Indictment. Moreover, to arrive to the area of the Capitol gathering, GEORGE, JR. traveled in an Uber from his hotel with two (2) females.

Despite the lack of connection between GEORGE, JR. and co-defendants Arthur Jackman, Paul Rae, Kevin A. Tuck, and Nathaniel A. Tuck, the Government has grouped them together in a single indictment, apparently based solely on their proximity to one another at certain times on January 6, 2021. In most instances, despite their physical proximity on January 6, 2021, much of the video or photographic evidence of their actions or presences do not overlap which respect to the Counts I-IV and IX in which GEORGE, JR. and all or partial co-defendants are charged. In fact, many of the videos, and the multitude of social media posts that the government has produced on behalf of GEORGE, JR. is often seen alone or some distance from the four (4) co-defendants, at various times demonstrating a lack of committing the charged offenses in conjunction with each other. Furthermore, many of the videos, and the multitude of social media posts that the government has produced on behalf of GEORGE, JR. and his codefendants, would be *inadmissible* in the government's case in chief against GEORGE, JR. as irrelevant since they largely do not even capture his conduct, nor do they demonstrate his intent that day. Fed. R. Evid. 402.

Admittedly, in the Grand Jury transcript testimony Page 6, Lines 3-6 of Olivia Temrowski of the Federal Bureau of Investigation ("FBI") given on Wednesday, July 7, 2021 GEORGE, JR.'s cellular was merely "around the Capitol between approximately 2:13[p.m.] and 3:28 p.m." (G.J. Trans. July 7, 2021). Furthermore, Agent Temrowski testified when the cooperating witnesses, unrelated to the four (4) codefendants, asked for GEORGE, JR.'s location, the photograph depicted some of the codefendants in the background along with many other individuals that were present and a video which

3

hundreds of individuals far from the Capitol. Furthermore, there is no admission by GEORGE, JR. of being a member of the "Proud Boys" as implied by the Government.

## ARGUMENT

Defendant, GEORGE, JR., is improperly joined under controlling precedent. There is no concerted action demonstrated, or even alleged, between GEORGE, JR. and the four (4) codefendants. Their conduct is separate and distinct, which is evident both from the face of the Indictment, as well as from discovery productions.

Moreover, there is a real danger that the jury will become confused at trial and fail to consider the evidence against each defendant independently. Considering the potential for prejudice, the only relief that guarantees GEORGE, JR.'s substantive rights is severance.

**I.  The defendants are improperly joined under the controlling interpretation of Rule 8(b).**

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of defendants only if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). To properly join two or more defendants in this District, the Government must sufficiently demonstrate "the existence of a common scheme or plan spanning both transactions and both defendants." *United States v. Perry*, 731 F.2d 985, 991 (D.C. Cir. 1984).

**A. There is an insufficient nexus to support the joinder of GEORGE, JR. with his co-defendants.**

Though generally favored, joinder does not authorize the Government to string together, for common trial, defendants charged in separate and distinct crimes. Further, joinder of defendants in a single Indictment does not permit arbitrary grouping of separate and distinct crimes without a logical relationship. When such joinder appears to prejudice the parties involved, courts are empowered and indeed required, to order severance or other appropriate remedies to prevent prejudice.

For example, in a case cited favorably by the District of Columbia Circuit in *Jackson*, the Fourth Circuit observed:

> There is nothing in the evidence to show that Whitehead and Meredith could have been joined in the same indictment. Whitehead allegedly dealt with Jackson, and Jackson with Meredith. The burden is on the government to show that persons to be joined participated in the same act or transactions, or in the same series of acts or transactions. Although there was a 'series' of transactions involving a common denominator (Jackson), the government did not meet its burden of proving that there was any connection between appellant's offense and Meredith's offense. Carried to its logical conclusion, the government's theory might well allow us to join in a common indictment and trial two delinquent taxpayers who used the same accountant. Such a result approaches the ridiculous. Clearly, the joinder of Whitehead and Meredith in the instant case was improper."

*United States v. Whitehead*, 539 F.2d 1023, 1025 (4th Cir. 1976); *see also Jackson,* 562 F.2d at 796 (citing to *Whitehead* for the proposition quoted). There are definite limits to what the government can put together in a single indictment." *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991). Rule 8(b) "may not be read to embrace similar or even identical offenses, unless those offenses are related.... There must be a logical relationship between the acts or transactions within the series." *Id*. citing *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984); *United States v. Brown*, 823 F.2d 591, 598 (D.C.Cir.1987)

5

(charges against defendants are properly joined under Rule 8(b) when they are based on a "series of acts or transactions" that are part of a common scheme or plan).

While GEORGE, JR.'s charges are similar to[3] those of his co-defendants, the Government cannot establish a "series of acts or transactions" and cannot establish there were shared plans or agreements by GEORGE, JR. and the four (4) codefendants regarding their conduct on January 6, 2021 to properly join Arthur Jackman, Paul Rae, Kevin A. Tuck, and Nathaniel A. Tuck with GEORGE, JR. While merely being present at the Capitol on the same date, along with hundreds of others of men and women, Arthur Jackman, Paul Rae, Kevin A. Tuck, and Nathaniel A. Tuck and Edward George, Jr. are alleged to have committed separate acts, notwithstanding the grouping of those disparate acts in certain counts.

Because GEORGE, JR.'s alleged actions were largely separate and distinct, *and less severe*, from his joined co-defendants, they are improperly joined. *Kotteakos v. United States* 328 U.S at 773. Thus, unless the Government demonstrates a logical nexus between GEORGE, JR. and the co-defendants, the Court must sever the proceedings.

### B. The conduct alleged against GEORGE, JR. and his co-defendant, was not part of the same "transaction" within the meaning of Rule 8(b).

Like its civil joinder counterpart, Rule 8 reflects the mid-20th century litigation reforms that were designed to promote judicial economy through the aggregation of related

---

[3] Similar" conduct is plainly insufficient for joinder under Rule 8(b). *See Jackson*, 562 F.2d at 796 ("When similar but unrelated offenses are jointly charged [even] to a single defendant, some prejudice almost necessarily results") (quoting *Cupo v. United State*s, 359 F.2d 990, 993 (D.C. Cir. 1966)).

6

claims.[4] Specifically, both rules permit joinder where parties are involved in the same transaction, because the overlap in material facts facilitates increased efficiency when litigating the matters together. *Compare* Fed. R. Civ. P. 20(a)(1)(A), (a)(2)(A) ("…arising out of the same transaction, occurrence, or series of transactions or occurrences"), with Fed. R. Crim. P. 8(b) ("…participated in the same act or transaction, or in the same series of acts or transactions"); *see also Jackson*, 562 F.2d at 794 ("[T]he excuse being the benefit to the courts.") (Observing that the purpose of Rule 8 is the promotion of judicial economy.) While there is a policy favoring joinder where joinder would create efficiencies, *United States v. Mason*, 951 F.3d 567, 576 (D.C. Cir. 2020), cert. denied, 140 S. Ct. 2787 (2020) (quoting *Perry*, 731 F.2d at 991), it must be clear that efficiencies actually exist. *See Perry*, 731 F.2d at 990 ("Where … there are no presumptive benefits from joint proof of facts relevant to all the acts or transactions… Rule 8(b) comes to an end, and joinder is impermissible.") (quoting *Jackson*, 562 F.2d at 794-95).

That said, criminal procedure analogy to the civil context always has its limitations. As the Court of Appeals for the District of Columbia Circuit observed after the modern Rules were implemented:

---

[4] Compare Edward Q. Carr, *Some Aspects of Joinder of Causes,* 5 Fordham L.R. 452, 457 (1936) ("Contemporary reforms in practice and [civil] procedure include the removal of many of the restrictions covering the joinder of causes of action in the complaint. The policy of modern statutes is to encourage joinder of causes…animated by motives of practical expediency."), *with Reform in Criminal Procedure*, 50 Yale L.J. 107, 108 (1940) ("It is customary to regard procedural reform as a streamlining operation…[I]n the reform of criminal procedure… it must not only *provide speed and efficiency of administration*, but it must also safeguard the interests of a multitude of uncounseled 'little people.'") (emphasis added); *see also Jackson*, 562 F.2d at 794 ("This would be consistent with the pattern of the Civil Rule that the draftsmen seem generally to have taken as their model") (describing Rule 8 as the intended analogue to the joinder rule under the Federal Rules of Civil Procedure).

> 'The civil model . . . is often inappropriate in criminal procedure, and no subject illustrates this fact better than joinder.' Efficiency 'the conservation of judicial energy and the avoidance of multiplicity of litigation' may be pursued with single-minded devotion in the rules and doctrines of civil procedure, but, **on the criminal side, solicitude for efficient judicial administration must sometimes give way to the need to protect the rights of defendants.**"

*Jackson*, 562 F.2d at 799 (quoting 8 Moore's Federal Practice § 8.02(1), at 8-3 (2d ed. 1976)) (emphasis added).

Because of the potential for prejudice in the criminal context, the efficiency of joinder must typically be evident from the face of the Indictment, as in the case of conspiracy, or clearly established in pre-trial proceedings. *See, e.g., id.* ("[T]his possibility of [efficiency] benefit should explicitly appear from the indictment or from other representations by the government before trial."); *see also Perry*, 731 F.2d at 990 ("Quite obviously, the indictment might satisfy this requirement, for instance when a conspiracy charge links all the offenses and defendants. Subsequent pre-trial representations, however, may suffice equally to satisfy Rule 8(b)."); *but see, e.g., Thomas v. United States*, 849 F.3d 669 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 261 (2017) (holding that a court may only look to the face of the indictment for making such a determination).

In *Perry*, the District of Columbia Circuit applied Rule 8(b), and observing its potential for prejudice, it reaffirmed the standard first articulated in *Jackson*: the government carries the burden of sufficiently demonstrating "the existence of a common scheme or plan ***spanning both transactions and both defendants***." *Perry*, 731 F.2d at 991 (emphasis added). Of course, multiple defendants charged in the same conspiracy almost always satisfies this standard, because a conspiracy charge is the "common thread that ties

8

all of the defendants and charges together." *U.S. v. Edelin*, 118 F. Supp. 2d 36, 39 (D.D.C. 2000) ("Rule 8(b) . . . makes clear that joinder for trial is proper where the indictment charges multiple defendants with a *single conspiracy* and also charges some of the defendants with substantive counts arising out of the conspiracy.") (citing *United States v. Simon*, 839 F.2d 1461, 1472 (11th Cir. 1988)) (emphasis added). This is true even when all defendants are not charged in each count, provided each count relates to the same conspiracy. *See* Fed. R. Crim. P. 8(b); *see also Perry*, 731 F.2d at 991 ("The district court here was presented with two cocaine transactions involving the same purchaser, the same intermediary … [t]here was certainly an ongoing relationship, if not a single ongoing transaction.") (finding sufficient factual overlap between charges involving the same conspiracy, despite the fact that defendants were not charged together in all of the same counts).

Whether proximal conduct not charged as a conspiracy can satisfy the controlling "common scheme or plan" the standard is far less clear. Here, the only overlap in GEORGE, JR.'s case that is evident from the face of the Indictment appears to be that GEORGE, JR. is simply charged with the same criminal statute in many of the same counts as his codefendants. If the Government seriously contends this mere grouping is sufficient to render the five (5) codefendants part of the same "common scheme or plan" within the meaning of Rule 8(b) and *Perry*, it must concede that these attenuated links ***could apply to most, if not all, of the more than 1,400 January 6th defendants***. The absurdity of this logical extreme underscores the fact that the differences in the January 6th cases

9

overshadow the commonalities, yielding few, if any, efficiencies through joinder.[5] *See also Whitehead*, 539 F.2d at 1025 ("Such a result approaches the ridiculous.").

More likely, the differences would produce serious confusion and, by extension, inefficiency. That is precisely why, in the civil context, where an even broader joinder rule controls, this Court found that a party "cannot join defendants who simply engaged in similar types of behavior, but who are otherwise unrelated; some allegation of concerted action between defendants is required." *Spaeth v. Michigan State Univ. Coll. of L.,* 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (quoting *Grynberg v. Alaskan Pipeline Co*., No. 95–cv–725(TFH), 1997 WL 33763820, at *1, 2 (D.D.C. March 27, 1997) ("Courts have not joined totally independent actors, without any allegation of concert or conspiracy") (emphasis added); see also *Perry*, 731 F.2d at 990 ("Where … there are no presumptive [efficiency] benefits from joint proof of facts relevant to all the acts or transactions…joinder is impermissible."). Concerted means "mutually contrived or agreed on." Here, no actions "concerted" in nature are even alleged by the Government.

While GEORGE, JR. readily concedes that joint trials are generally preferred in order to, among other reasons, preserve judicial resources, produce consistent verdicts and minimize the burden on jurors, witnesses, defendants, and attorneys, under Rule 14 of the Federal Rules of Criminal Procedure, joinder will not, however, always be proper. *See Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987); *Edelin*, 118 F.Supp.2d at 40. GEORGE,

---

[5] Indeed, the heartland of joinder efficiency, i.e., mutual relief or liability, is not in play here: the determination of any material fact in GEORGE, JR.'s case will not resolve any material fact or issue in his co-defendants' counts, and vice versa.

JR. respectfully submits that the factual, evidentiary and bureaucratic reasons as to why joinder is generally favored are not present here. Instead, the *de minimis* factual overlap and lack of mutual liability, the lack of mutually contrived or agreed concerted action strongly suggest that there are no efficiencies to be gained in trying GEORGE, JR. with the codefendants.  As such, they have been improperly joined and GEORGE, JR. should be severed in this matter.

> **II.      Even assuming the defendants are properly joined under Rule 8(b), the Court should sever GEORGE, JR.'s trial from his co-defendant to protect his substantive rights.**

Severance is warranted where joinder appears to prejudice defendant, such as when there is serious risk that joint trial would either (1) compromise specific trial right of one defendant, or (2) prevent jury from making reliable judgment about guilt or innocence. Fed. R. Crim. P. 14. As such, under Rule 14(a) states:

> "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendant or provide whatever other relief justice requires."

The decision to grant severance remains firmly within this Court's discretion and the Court may exercise its discretion to sever the defendants even if it finds they are properly joined. *See Zafiro v. United States*, 506 U.S. 534, 541 (1993); *Edelin*, 118 F. Supp. 2d at 41.  Although the concerns of judicial efficiency are important, the trial judge must be careful to examine any potentially prejudicial effects of joinder against each defendant. *United States v. Applewhite*, 72 F.3d 140, 144 (D.C.Cir.1995) (per curiam) (trial court must balance interest of judicial efficiency against risk of prejudice to defendant).

Like Rule 8, courts have interpreted Rule 14 in favor of joinder. *See Zafiro*, 506 U.S. at 539. However, as explored *supra*, the general approval of joinder is not without limitation: the Supreme Court has made clear that severance of properly joined defendants is appropriate where, as here, there the dangers for "transference of guilty from one [defendant] to another . . . subconsciously or otherwise, are so great that no one can really say prejudice to a substantial right has not taken place." *Kotteakos*, 328 U.S. at 750; *see also United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]here are definite limits to what the government can put together in a single indictment."). The Court has observed that "such risk is 'heightened' when, for example, 'many defendants are tried together in a complex case, and they have ***markedly different degrees of culpability' or evidence 'that would not be admissible if a defendant were tried alone is admitted against a codefendant***.'" *United States v. Franklin*, No. CR 04-128 (RMC), 2005 WL 8157514, at *2 (D.D.C. Dec. 16, 2005) (quoting *Zafiro*, 506 U.S. at 539). (emphasis added).

In *Kotteakos*, the Supreme Court applied these principles in assessing the appropriateness of joining 34 defendants. 328 U.S. at 772-75. While the indictment charged a single conspiracy, the Court found that proof introduced at trial actually established eight or more distinct conspiracies, loosely connecting the various defendants through an incomplete overlap in membership. *Id*. at 774. Because of the concern that the broad web of conspiracies would overshadow individual conduct, the Court held that the defendants were improperly joined. *Id*. at 774. Specifically, the Court recognized the danger of prejudice where joinder has the tendency to falsely amplify the scope of criminal culpability:

> When many conspire, they invite mass trial by their conduct. Even so, the proceedings are exceptional to our tradition and call for use of every safeguard to individualize each defendant in his relation to the mass. ***Wholly different is it with those who join together with only a few, though many others may be doing the same and though some of them may line up with more than one group.***
>
> Criminal they may be, ***but it is not the criminality of mass conspiracy. They do not invite mass trial by their conduct. Nor does our system tolerate it. That way lies the drift toward totalitarian institutions.*** True, this may be inconvenient for prosecution. But our Government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal Case 1:21-cr-00040-TNM Document 206 Filed 01/25/22 Page 11 of 15 12 trials. About them we dare not become careless or complacent when that fashion has become rampant over the earth.

*Id*. at 773 (emphasis added). The Court further held that the trial court's caution to the jury *"to consider each defendant's case separately" was not enough* to mitigate the error, because it permeated the atmosphere of the entire trial. *Id*. at 769-70. In fact, the Court was so convinced of the potential for prejudice that its decision was not impacted by the fact that some of the defendants were acquitted. *Id*. at 768-69. Finally, the Court squarely rejected the government's argument that Rule 14 necessitates a consideration of the potential for joinder efficiencies that can override concerns about prejudice:

> True, this may be inconvenient for prosecution. But our government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal trials.

*Id*. at 773.

Accordingly, the D.C. Circuit has instructed that "[s]everance may be required ...when the evidence against one defendant is far more damaging than the evidence against

13

the other defendant[s]." *United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991) (internal quotation marks omitted); *see also United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999). "The few cases in which [the D.C. Circuit has] overturned a trial court's denial of a motion to sever have involved clear disparities between the weight, quantity, or type of the evidence against the movant and against the other defendants." *Halliman*, 923 F.2d at 884. The critical question is "whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant." *Id.* In any event, measures less drastic than severance, such as limiting instructions, often suffice to cure any risk of prejudice. *Zafiro*, 506 U.S. at 539. In addition, the trial court "has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960); *Perry*, 731 F.2d at 992.

The dangers of a mass trial that the *Kotteakos* Court and D.C. Courts have recognized are present in the similar charges in the instant Third Superseding Indictment, and the proof by the Government involves clear disparities between the weight, quantity, or type of the evidence against GEORGE, JR. and against the other four (4) codefendants. GEORGE, JR. is charged by Indictment but with no single, common thread tying the defendants together.[6] While the compounding concern present in *Kotteakos*—i.e. without granting severance of GEORGE, JR. from the other four (4) codefendants, will also

---

[6] As observed *supra*, it is not enough that a single defendant is relevant to each of the other defendants. *See Kotteakos,* 328 U.S. 750, 773 ("[Joinder does not] authorize the Government to string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all").

confuse the jury by the difference between the suggestion of uncharged conspiracy and the Government's inability to prove all defendants acted in a concerted action is actually evidenced, and the prejudice concern is highly analogous. Specifically, there is a danger that the jury will associate each defendant with collective conduct of the other defendant's actions.

The Supreme Court has found that this concern is particularly pressing where, as here, there are significantly different degrees of culpability among the joined defendants, and where much of the evidence is only admissible against one party. *Zafiro*, 506 U.S. at 539; see also *United States v. Erwin*, 793 F.2d 656, 666 (5th Cir. 1986) (holding severance required because "[t]he charges against [defendant] were only peripherally related to those alleged against the other [co-defendants, and] [a]s the trial progressed, it became increasingly apparent that very little of the mountain of evidence was usable against her"). For example, amongst other charges, while GEORGE, JR., like codefendants Arthur Jackman, Paul Rae, Kevin A. Tuck and Nathaniel A. Tuck stand accused with Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D) by willfully and knowingly engaged in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress (Count V) or Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2 (Count I) and Obstruction of an Official

15

Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2) (Count II), the disparities between the weight, quantity, or type of the evidence against the other four (4) codefendants and that as to GEORGE, JR., are noticeably absent along with the lack of mutually contrived or agreed concerted action. The facts thus reveal significant differences in "degrees of culpability." *Zafiro*, 506 U.S. at 539.[7] GEORGE, JR. stands to be deeply prejudiced by association.

For example,

Finally, while the government may argue that a joint trial will promote judicial economy, as argued support by caselaw the balancing test of prejudice against efficiency where the defendant's Due Process and substantive Constitution rights are at issue weigh in favor of severing GEORGE, JR. from the other four (4) codefendants in the Third Superseding Indictment. *Kotteakos*, 328 U.S. at 773 ("[O]ur Government is not one of mere convenience or efficiency...about [individual protections] we dare not become careless or complacent when that fashion [of efficiency] has become rampant over the earth.").

---

[7] Indeed, the differences in degrees of culpability are also evidenced by the number of social media posts alleged by his co-defendant.

16

## CONCLUSION

For the foregoing reasons, EDWARD GEORGE, JR. moves to sever his trial from that of his co-defendants.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| **THE CUNILL LAW FIRM, P.A.** | **GEORGE T. PALLAS, P.A** |
| Counsel for EDWARD GEORGE, JR. | Counsel for EDWARD GEORGE, JR. |
| 1000 Brickell Avenue, Suite 1100 | 2420 SW 22nd Street |
| Miami, FL 33131 | Miami, FL 33145 |
| Tel. (305) 218-0564 | Tel. (305) 856-8580 |
| Fax (305) 402-0261 | Fax: (305) 860-4828 FAX |
| Email: **Andrea@CunillLawFirm.com** | Email: **George@pallasLaw.com** |
| By:/s/__*Andrea S. Cunill*_____ | By:/s/___*George T. Pallas*_____ |
| ANDREA S. CUNILL, ESQ.[8] | GEORGE T. PALLAS, ESQ. |
| Bar ID: FL00141 | Bar ID: FL0108 |

## **CERTIFICATE OF SERVICE**

I certify that on this 1st day of July, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing.

By:/s/__*Andrea S. Cunill*_____         By:/s/___*George T. Pallas*_____
    ANDREA S. CUNILL, ESQ.                                  GEORGE T. PALLAS, ESQ.
    Bar ID: FL00141                                                     Bar ID: FL0108

---

[8] Second Chari - Pro Bono counsel for Trial Certification hours.